1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9

10   MEGAN HANFORD,

11                  Plaintiff,                    CASE NO. 2:16-cv-00921 JRC

12          v.                                    ORDER ON PLAINTIFF'S
                                                  COMPLAINT
13   CAROLYN W. COLVIN, Acting
14   Commissioner of the Social Security
     Administration,
15
                    Defendant.
16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, Dkt. 4; Consent to Proceed Before a United States

20   Magistrate Judge, Dkt. 5). This matter has been fully briefed (*see* Dkt. 10, 11, 12).

21          After considering and reviewing the record, the Court concludes that the ALJ

22   erred when failing to credit fully the opinions from plaintiff's treating cardiologist, Dr.

23   Stout, and failing to give such opinions controlling weight. Although the ALJ found that

24

ORDER ON PLAINTIFF'S COMPLAINT - 1

1  the opinion of a limitation on standing/walking for less than two hours in an eight hour

2  workday with unscheduled, intermittent 10 minute breaks is inconsistent with plaintiff's

3  reports throughout the treatment record, the ALJ failed to cite to any evidence in the

4  treatment record demonstrating that plaintiff was capable of standing or walking for two

5  or more hours in a work day without intermittent breaks. Similarly, although the ALJ

6  found insufficient evidence supporting Dr. Stout's opinion that plaintiff suffered from

7  symptoms of arrhythmia, plaintiff's arrhythmias are documented regularly throughout the

8  treatment record.

9       Plaintiff's claim was filed in 2007 and the Administration has had three attempts

10  to adjudicate this claim. For this reason, based on the record as a whole, and because the

11  treatment record demonstrates that the ALJ would be required to find plaintiff disabled

12  on remand if Dr. Stout's opinions are credited-in-full, the Court concludes that this matter

13  is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the matter is

14  remanded to the Administration with a direction to find that plaintiff is disabled and to

15  award benefits.

16                                   BACKGROUND

17       Plaintiff, MEGAN HANFORD, was born in 1984 and was 22 years old on the

18  alleged date of disability onset of March 1, 2007 (*see* AR. 158-67). Plaintiff has a high

19  school diploma and completed two years of community college (AR. 1202-03).  Plaintiff

20  has work history as a retail store manager, but quit after she had surgery (AR. 1203).

21       According to the ALJ, plaintiff has at least the severe impairments of "congenital

22  aortic stenosis, status-post multiple aortic valve replacements, status-post pacemaker

placement in 2004, and aortic aneurysm repair in March of 2007; residual cognitive effects status-post left frontal cerebrovascular accident; residual right-sided diaphragmatic paralysis; depression; anxiety; and obesity (20 CFR 404.1520(c))" (AR. 1148).

At the time of the hearing, plaintiff was living with her husband (*see* AR. 1295).

<u>PROCEDURAL HISTORY</u>

Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration (*see* AR. 107-09, 111-12). Plaintiff has provided an uncontested procedural history as follows:

> Plaintiff filed an application for disability insurance benefits on July 19, 2007 alleging disability beginning March 1, 2007, and with a date last insured of June 30, 2010. Tr. 158. Plaintiff's claim was denied initially and on reconsideration. Tr. 107, 111. The first ALJ to consider Plaintiff's claim issued a partially favorable decision finding that Plaintiff's chronic pulmonary insufficiency satisfied a listed impairment until March 27, 2008. Tr. 1357. This Court remanded Plaintiff's claim to the Commissioner pursuant to a stipulated motion. Tr. 1381.
>
> A second ALJ issued a decision denying Plaintiff's claim on October 24, 2012. Tr. 1406- 30. Plaintiff requested review, and the Appeals Council granted Plaintiff's request for review on July 28, 2014. Tr. 1431-37. The Appeals Council remanded Plaintiff's claim. Tr. 1435.
>
> ALJ Cynthia D. Rosa held a third hearing on January 21, 2015. Tr. 1193. The ALJ issued another decision denying Plaintiff's claim on May 29, 2015. Tr. 1142-92. The Appeals Council denied Plaintiff's request for review on April 11, 2016 (Tr. 1137-41), making the ALJ decision the Commissioner's final decision.

(Dkt. 10, p. 2).

1    In plaintiff's Opening Brief, plaintiff raises the following issue: Whether or not

2 the ALJ provided clear and convincing reasons supported by substantial evidence in the

3 record for rejecting the opinion of Dr. Karen Stout, M.D., plaintiff's treating cardiologist,

4 who assessed limitations inconsistent with the ability to perform any work in the national

5 economy (*see* Dkt. 10, p. 1).

6                              STANDARD OF REVIEW

7    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

8 denial of social security benefits if the ALJ's findings are based on legal error or not

9 supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

10 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

11 1999)).

12

13                                  DISCUSSION

14    **Whether or not the ALJ provided clear and convincing reasons supported by**
      **substantial evidence in the record for rejecting the opinion of Karen Stout,**
15    **M.D., plaintiff's treating cardiologist, who assessed limitations inconsistent**
      **with the ability to perform any work in the national economy.**
16

17    Plaintiff contends that the ALJ erred by failing to credit fully and give controlling

18 weight to the opinions of plaintiff's treating cardiologist (Dkt. 10, pp. 5-18). Defendant

19 contends that there is no harmful error and that the ALJ's decision is based on substantial

20 evidence in the record as a whole (Dkt. 11).

21    "A treating physician's medical opinion as to the nature and severity of an

22 individual's impairment must be given controlling weight if that opinion is well-

23 supported and not inconsistent with the other substantial evidence in the case record."

24

*Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (citing SSR 96-2p, 1996 SSR LEXIS 9); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when a treating physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Plaintiff was born in 1984 and was diagnosed with congenital aortic stenosis as an infant (*see* AR. 1724). Throughout her life, plaintiff has had a number of surgeries including a surgical valvotomy as an infant, and aortic valve replacement in 1999, then aortic enlargement surgery in 2000, and another aortic valve replacement in 2004 (AR. 387, 1724). After her 2004 surgery, plaintiff had a pacemaker placed (AR. 387). Prior to 2007, plaintiff worked as a retail sales associate and retail sales manager (*see* Dkt. 10, p. 2).

In March 2007, plaintiff was diagnosed with an abdominal aortic aneurysm (AR. 392). Plaintiff underwent surgery to resect the aneurysm on March 14, 2007 (AR. 390). As a result of her surgery and resulting complications, plaintiff suffered an anoxic event, confirmed subsequently by imaging as a stroke, and also suffered a seizure (*see* AR. 386, 390, 459, 693, 706). Plaintiff was in the hospital over 70 days, and her recovery was complicated by acute kidney failure requiring dialysis, abdominal infection from her feeding tube, and difficulty breathing, and ultimately was diagnosed with bilateral diaphragmatic paralysis, requiring prolonged ventilation (*see* AR. 267, 309, 380, 608, 696, 702, 707, 709, 728, 730, 732).

On October 14, 2009, plaintiff's treating cardiologist, Dr. Karen Stout, M.D., indicated that plaintiff suffered from fatigue as a result of all of her conditions, primarily her diaphragmatic paralysis and obesity, and opined that plaintiff would be limited to standing/walking less than two hours in an eight-hour workday and would require several unscheduled 10 minute breaks during the workday (AR. 979). Dr. Stout also opined that plaintiff's conditions likely would result in good and bad days, which would cause plaintiff to be absent from work for 3 to 4 days per month (*see id*.).

On September 17, 2010, Dr. Stout submitted another letter, indicating that three separate exercise tests objectively documented plaintiff's "significant physical limitations" (AR. 1136). According to this letter, plaintiff had undergone two treadmill stress tests and cardiopulmonary exercise tolerance test ("CPET"), all of which indicated a lack of stamina (*see id*.). These objective tests render Dr. Stout's opinions well supported. As noted by Dr. Stout, on "the treadmill tests, plaintiff's functional aerobic

impairment (FAI) scores were +37% and +35% respectively, [whereas] the usual reported range is -20% to +20%  . . . .  thus, plaintiff was well outside the usual range, with clearly poor exercise capacity" (*id.*). Similarly, on the CPET, plaintiff's "maximum VO2/kg score of 14.5 was only 46% of predicted" (*id.*).

On January 13, 2015, Dr. Stout provided another clarification of her previous opinions (*see* AR. 2193-2201). Dr. Stout indicated that plaintiff continued to experience fatigue as a result of her combination of impairments (AR. 2199). She indicated that plaintiff "continues to have symptoms of arrhythmia, which can lead to fatigue" (*id.*). Dr. Stout opined that plaintiff should be "allowed to work in a sitting capacity with frequent breaks" (*id.*). She opined that plaintiff could stand/walk for less than two hours in an eight-hour workday as a result of her surgical repairs, with the ability to rest as needed and that plaintiff would have 3 to 4 absences per month based on the ups and downs that she experienced as a result of her cardiac symptoms (*id.*).

The ALJ failed to credit fully Dr. Stout's opinion and did not give it controlling weight (AR. 1174). Specifically, the ALJ rejected Dr. Stout's opinion that plaintiff would be limited to less than two hours of standing/walking per work day, with several unscheduled 10 minute breaks, on the basis that "the record includes no recommendations or warnings by that doctor or any other to limit her standing/walking," and that Dr. Stout's colleagues recommended that plaintiff be more active and exercise more (AR. 1174). The fact that there are no warnings in the record for plaintiff to limit her standing/walking is not inconsistent with Dr. Stout's opinion that plaintiff's functional ability consists of less than two hours per day of standing/walking during an

eight-hour work day, with several breaks. Nor is it inconsistent with Dr. Stout's opinion that plaintiff would be absent from work 3 to 4 days per month. Similarly, recommendations that plaintiff be more active and exercise more are not inconsistent with the opined limitations. This is especially the case where the record demonstrates that although plaintiff was encouraged to exercise in order to lose weight, plaintiff was "having a hard time with weight loss because she cannot tolerate much exercise, and Dr. Stout has talked to her about not pushing her exercise too vigorously" (AR. 945). Similarly, the record reflects that plaintiff "walks approximately 15-20 minutes on flat surfaces twice a day and states that she can do this without difficulty; however, she does not go further because she feels that her heart speeds up and does not know if this is okay" (AR. 965). The record also reflects that plaintiff was "limited in exercise activity by heart rate goal set by her cardiologist, Dr. Stout, at 120" (AR. 1028). The record reflects that this heart rate goal "limits [plaintiff] to very little activity through the day" (*id.*). Therefore, the fact that it was recommended to plaintiff that she exercise more does not demonstrate any inconsistency with Dr. Stout's opinion that plaintiff was limited to less than two hours of standing/walking in an eight hour workday with several intermittent 10 minute breaks and that she would be absent from work 3 to 4 days per month.

The ALJ also noted that plaintiff asserted a 30 pound weight limit, but Dr. Stout did not mention any restriction and lifting/carrying (*see id.*). However, this also does not demonstrate any inconsistency with Dr. Stout's opinion. At most, this is a reason not to credit plaintiff's assertion that she had a lifting limitation of 30 pounds: it is not a

legitimate reason for the failure to credit fully the opinion from plaintiff's treating

cardiologist regarding standing and walking, the need for breaks and likely absences.

The ALJ also found that Dr. Stout's opinion regarding the standing/walking

limitation with unscheduled, intermittent breaks is inconsistent with plaintiff's testimony

that she could not be on her feet for two hours without being able to sit "for a little bit in

between" (*see id*.).  However, this finding by the ALJ is not based on substantial evidence

in the record. Plaintiff did not testify that she could stand daily for two or more hours

during an eight-hour workday in the context of full time employment without several

daily unscheduled 10 minute breaks, as found by the ALJ (*see* AR. 1153-54). The

testimony referred to by the ALJ occurred at the August 2012 hearing (*see* AR. 1261).

The ALJ asked plaintiff "do you think you could be on your feet for two hours at any

given time?" (*id*.). Plaintiff replied "probably not without sitting down for at least a little

bit in between" (*id*.). The ALJ's finding that plaintiff's testimony is inconsistent with Dr.

Stout's opinion is not based on substantial evidence in the record as a whole.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such

"'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v.

Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).  Plaintiff's indication that she could not

stand for two hours at a time without sitting in between is not sufficient relevant evidence

to allow a reasonable mind to accept the finding that Dr. Stout's opinion that plaintiff

could stand/walk less than two hours in an eight-hour workday with several unscheduled

10 minute breaks is inconsistent with plaintiff's testimony. *See id*. This is especially the

case given the context of plaintiff's testimony surrounding this question, where plaintiff was asked how long she could stand at one time and she testified that she could not put an exact time on it, but that sometimes, "it can be 10 minutes, sometimes it can be 15 minutes, 20 minutes" (AR. 1261). Furthermore, plaintiff's testimony is completely consistent with Dr. Stout's opinion that plaintiff would require several unscheduled breaks lasting 10 minutes during an eight-hour workday, an opinion that is not inconsistent with any evidence in the record cited by the ALJ.

The ALJ also relied on a finding that Dr. Stout's opinion was inconsistent with plaintiff's reports in the medical record. However, nothing in plaintiff's reports is inconsistent with Dr. Stout's opinions. For example, as noted by defendant, plaintiff reported that she was walking a few miles a day; doing usual housework; sleeping well; only rarely taking naps; and experiencing no difficulty with somnolence during the day (Dkt. 11, p. 6 (citing AR. 907)). Plaintiff also reported that she felt almost back to her usual level of good health and denied fatigue, shortness of breath, or chest pain (*id.* (citing AR. 524)). However, once again, none of these reports by plaintiff demonstrates inconsistency with the opinion from Dr. Stout. For example, neither the ALJ, nor defendant, sites to any evidence in the record that it took plaintiff more than two hours to walk a few miles, or that she did so without intermittent 10 minute breaks. In fact, plaintiff's report about these activities demonstrates that she needed regular breaks. In July, 2007, plaintiff indicated that she was able to walk for a few hours around the mall "with breaks in between" (AR. 660). This does not demonstrate any inconsistency with the opinion from Dr. Stout that plaintiff was limited to standing/walking less than two

hours during work days in a full-time work setting and needed intermittent breaks. Although defendant noted that plaintiff reported shopping, plaintiff indicated that she conducted this activity about "once or twice a week for about an hour or two hours" (AR. 193). Conducting an activity once or twice a week for a couple of hours is very different from conducting that same activity every day, five days a week in a work setting, where unscheduled intermittent breaks are not tolerated, as testified to by the Vocational Expert at plaintiff's hearing, as will be discussed further below, *see infra*. In fact, plaintiff's reports of requiring breaks in between her walking through the mall support Dr. Stout's opinion. Similarly, the fact that plaintiff was doing housework, cooking dinner, and feeding her animals, does not demonstrate any inconsistency, as the ALJ does not cite any evidence that plaintiff was standing/walking more than two hours in the span of a workday without regular 10 minute breaks to accomplish these activities. *See, e.g., Smolen v. Chater*, 80 F.3d , 1273, 1287 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted in original)); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Similarly, although at a particular visit, plaintiff denied shortness of breath or chest pain, this was in the context of minimal activities, and not when she was attempting to stand or walk for two or more hours daily during a work week without several 10 minute daily breaks (*see*

AR. 525). In fact, plaintiff reported concerns simply about driving at this time, but was

advised that she could resume driving, and that she could "resume as much of her

previous activities as tolerated" (*see id*.). Similarly, although defendant cites to plaintiff's

function report from August, 2007, where plaintiff reported that plaintiff shopped at the

mall, went to movies, and visited with friends, plaintiff's function report indicates that

she could "not shop at mall for long without having to rest or leave during shopping"

(AR. 194).

Nothing cited by the ALJ or defendant demonstrates that plaintiff could stand or

walk for two or more hours in a work day without taking several intermittent 10 minute

breaks. There is no inconsistency with Dr. Stout's opinion.

The ALJ also indicated that she did not find sufficient support for the opinion from

Dr. Stout that plaintiff "continues to have symptoms of arrhythmia, which can lead to

fatigue" (AR. 1175 (citing AR. 2193); *see also* AR. 2199). However, as noted by

plaintiff, "during some of plaintiff's heart-monitoring tasks, she did, in fact, experience

arrhythmias, which were objectively documented" (Dkt. 10, p. 16 (citing AR. 278

(tachycardia in May 2007), 309 (tachycardic throughout hospital course), 924 (brisk

tachycardia during treadmill stress test of November 2008), 1059 (brief periods of

tachycardia during sleep study in December 2009)). Although there were occasions

during which plaintiff was not contemporaneously suffering from an arrhythmia, such

does not mean that plaintiff was not having symptoms of arrhythmia, as clearly she was

demonstrating such symptoms regularly. As argued by plaintiff, the "ALJ's apparent

disbelief of Dr. Stout's opinion was akin to concluding that an individual with a seizure

disorder did not actually experience seizures because they did not have a seizure on every occasion that they were examined by their doctor" (Dkt. 10, p. 16). Perhaps the ALJ was unclear about the definition of arrhythmia; however, regardless, the finding by the ALJ that there was insufficient evidence of such is not based on substantial evidence in the record as a whole. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)); *see also, e.g.*, the Texas Heart Institute, "Categories of Arrhythmias," available at http://www.texasheart.org/HIC/Topics/Cond/arrhycat.cfm, last visited 12/20/2016 ("arrhythmias are generally divided into two categories: ventricular and supraventricular. . . .  The irregular beats can either be too slow (bradycardia) or too fast (tachycardia)).

For the reasons stated, the Court concludes that the ALJ failed to offer even specific and legitimate reasons supported by substantial evidence in the record as a whole for failing to credit fully the medical opinion of plaintiff's treating cardiologist, Dr. Stout. Plaintiff argues that clear and convincing reasons must be supplied for the ALJ's rejection of Dr. Stout's opinions, as only the non-examining source opinions differed and the opinion of a non-examining doctor does not alone constitute substantial evidence justifying the rejection of the opinion of a treating physician (*see* Dkt. 10, p. 6 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012)). In addition, the ALJ did not cite any

evidence from the record that is inconsistent with some of the opinions of Dr. Stout, such as the need for several daily 10 minute breaks. However, as the Court has concluded that the ALJ's reasoning is not even specific and legitimate, these other issues do not need to be decided. Dr. Stout's opinion that plaintiff required several unscheduled 10 minute breaks daily, an opinion that the ALJ rejected, is completely consistent with the record as a whole. Dr. Stout's opinion that plaintiff could stand/walk less than two hours a work day, required several 10 minute daily breaks and would be absent 3 to 4 days a month is well-supported and not inconsistent with substantial evidence in the record as a whole, thus the opinion should have been given controlling weight, as discussed further below.

Furthermore, the ALJ's failure to credit fully Dr. Stout's opinion is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (citing *Stout,* 454 F.3d at 1055-56).

Here, the ALJ failed to credit fully various opinions from Dr. Stout regarding plaintiff's functional limitations, such as her standing/walking limitation, that plaintiff

would need several unscheduled 10 minute breaks during an eight-hour workday and would be absent from work 3 to 4 days per month. The ALJ also failed to include these limitations into the assessment regarding plaintiff's residual functional capacity ("RFC") and failed to include these limitations into the hypothetical presented to the vocational expert ("VE"), upon which the ALJ relied when making her step five finding that there were jobs existing in significant numbers in the national economy plaintiff could perform, and when making her ultimate determination regarding non-disability. Therefore, the Court cannot conclude with confidence that "'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56).

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (quoting *Smolen*, *supra*, 80 F.3d at 1292).

1    Regarding step one, the Court already has concluded that the ALJ failed to provide

2    legally sufficient reasons for failing to credit fully the opinions of plaintiff's treating

3    cardiologist, Dr. Stout.

4    Regarding step two, the Court notes that the *Garrison* Court found that "the

5    district court abused its discretion by remanding for further proceedings where the credit-

6    as-true rule is satisfied and the record afforded no reason to believe that [the claimant] is

7    not, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (footnote

8    omitted). The court noted that simply providing an ALJ with another opportunity to reject

9    evidence is not proper, and concluded as follows:

10

11       Although the Commissioner argues that further proceedings would serve
         the "useful purpose" of allowing the ALJ to revisit the medical opinions
12       and testimony that she rejected for legally insufficient reasons, our
         precedent and the objectives of the credit-as-true rule forclose the argument
13       that a remand for the purpose of allowing the ALJ to have a mulligan
         qualifies as a remand for a "useful purpose" under the [second] part of the
14       credit-as-true analysis. (Citations to *Benecke*, 379 F.3d at 595 ("Allowing
         the Commissioner to decide the issue again would create an unfair 'heads
15       we win; tails, let's play again' system of disability benefits adjudication.");
         *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner,
16       having lost this appeal, should not have another opportunity to show that
         Moisa is not credible any more than Moisa, had he lost, should have an
17       opportunity for remand and further proceedings to establish his credibility."
         (citation omitted))).
18

19    *Id.* at 1021-22.

20    Here, there have been three attempts by administrative law judges to adjudicate

21    plaintiff's claim, which was filed in July 2007 (*see* AR. 1145). After the first such

22    attempt by ALJ Alexis, the matter was reversed and remanded from this Court based on

23    stipulation; after the second attempt by ALJ Ross, the Appeals Council accepted review

24

and remanded the case; and, after the third attempt by the ALJ herein, this Court has

concluded that yet again, the Administration has failed to adjudicate properly plaintiff's

claim (*see id.*). There is no "useful purpose" here in allowing an ALJ to revisit this case

again, unless there are outstanding issues that must be resolved before a determination of

disability can be made. *See Harman, supra,* 211 F.3d at 1178 (quoting *Smolen*, *supra*, 80

F.3d at 1292); *see also Garrison*, 759 F.3d at 1021-22. Based on the record as a whole,

including the ALJ's decision and the testimony from the VE, as discussed further below,

the Court concludes that there are no outstanding issues that must be resolved before a

determination of disability can be made.

Regarding step three, the Court must determine if it is clear from the record that

the ALJ would be required to find plaintiff disabled if the opinion of her treating

cardiologist, Dr. Stout, is credited. As already noted when discussing the objective

medical evidence, Dr. Stout's opinion is well supported, *see supra* (citing AR. 1136).

Therefore, as Dr. Stout's opinion is well-supported by objective medical evidence and not

inconsistent with other substantial evidence in the record, her opinion should have been

afforded controlling weight. *See Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849,

2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (citing SSR 96-2p, 1996 SSR

LEXIS 9) ("A treating physician's medical opinion as to the nature and severity of an

individual's impairment must be given controlling weight if that opinion is well-

supported and not inconsistent with the other substantial evidence in the case record");

*see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

Testimony by two different VEs demonstrates that if the opinions of Dr. Stout are credited in full, plaintiff is disabled. One VE testified in August, 2012 that if an individual with an RFC similar to that determined for plaintiff would need to take several unscheduled breaks, lasting 10 minutes, during an eight-hour day, that would prevent her from sustaining work activity (*see* AR. 1275). This earlier VE's testimony also indicates that if plaintiff were to be absent from work 3 to 4 days a month on a regular basis as a result of her impairments or treatment, such would prevent her from sustaining work activity (*see id*.). The ALJ did not cite to any evidence inconsistent with Dr. Stout's opinion that plaintiff would need several 10 minute unscheduled breaks or would be absent from work 3 to 4 days a month on a regular basis (*see* AR. 979).

Similarly, a second VE testified in January, 2015, that if plaintiff were to have more than one day a month of absenteeism, such would not be tolerated by employers (AR. 1227). This same VE testified that if plaintiff had to take a 10 minute rest break once a day in addition to regular breaks, such "would not be tolerated" (AR. 979, 1229).

Therefore, it is clear from the record that if Dr. Stout's opinions are credited in full, that the ALJ would be required to find plaintiff disabled. Therefore, there is no reason to remand this matter for further administrative proceedings. Instead, on remand, the Administration is directed to find plaintiff disabled and award benefits. *See Harman, supra*, 211 F.3d at 1178 (quoting *Smolen, supra*, 80 F.3d at 1292); *see also Garrison*, 759 F.3d at 1021-22.

//

//

1

<u>CONCLUSION</u>

2

Based on the stated reasons and the relevant record, the Court **ORDERS** that this

3

matter be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the

4

matter be remanded to the Administration with a direction to find that plaintiff is

5

disabled, consistent with this order.

6

**JUDGMENT** should be for plaintiff and the case should be closed.

7

Dated this 22nd day of December, 2016.

8

9

10

J. Richard Creatura
United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24